UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LEELIN J. MILLER,         )    Case No. 1:16CV1377
                           )
        Petitioner,     )    JUDGE DONALD C. NUGENT
                           )    Magistrate Judge George J. Limbert
    v.                  )
                           )
TOM SCHWEITZER, Warden,   )
LEBANON CORRECTIONAL     )    **REPORT AND RECOMMENDATION**
INSTITUTION,[1]            )    **OF MAGISTRATE JUDGE**
                           )
        Respondent.    )
                           )

        Pro se Petitioner Leelin J. Miller ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred in conjunction with his Cuyahoga County, Ohio Court of Common Pleas convictions for: aggravated murder with firearm specifications; aggravated robbery with firearm specifications, repeat violent offender ("RVO") specifications and prior conviction ("PC") specifications; kidnapping with firearm specifications, RVO specifications and PC specifications; murder with firearm specifications; felonious assault with firearm specifications, RVO specifications and PC specifications; grand theft with firearm specifications; and having weapons under disability ECF Dkt. #1; ECF Dkt. #13-1 at 25. On May 23, 2016, Petitioner executed his federal habeas corpus petition and on June 7, 2016, the petition was filed with this Court. ECF Dkt. #1. On November 29, 2016, Respondent (Respondent") filed an answer/return of writ. ECF Dkt. #13.

        On January 9, 2017, Petitioner filed a motion to expand the record pursuant to Rule 7 of the Federal Rules of Civil Procedure. ECF Dkt. #15. On January 9, 2017, Respondent filed a brief in opposition to the motion and Petitioner filed a reply on January 27, 2017. ECF Dkt. #s 16, 17.

---

[1] The undersigned notes that Petitioner is now housed at the Madison Correctional Institution in London, Ohio, where Rhonda R. Richard is the Warden. *See* www.drc.ohio.gov/maci. While Respondent sent the answer/return of writ to Petitioner at the Madison Correctional Institution, the answer/return of writ was nevertheless filed on behalf of the Warden at the Lebanon Correctional Institution, where Petitioner was housed, and not where he is currently housed. Rule 2(a) of the Rules Governing § 2254 Cases. The proper Respondent in this case is therefore Rhonda R. Richard, Warden of the Madison Correctional Institution, where Petitioner is currently housed.

On June 2, 2017, Petitioner filed a Stay in Abeyance pursuant to Rule 62 of the Federal Rules of Civil Procedure. ECF Dkt. # 20. Respondent filed a brief in opposition to the request on June 5, 2017. ECF Dkt. #21.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice based upon Petitioner's procedural default of all of his grounds for relief. Consequently, the undersigned DENIES AS MOOT Petitioner's motion requesting expansion of the record (ECF Dkt. #15) and Petitioner's request for a stay (ECF Dkt. #20).

## I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A. Synopsis of the Facts

The Eighth District Court of Appeals of Ohio set forth the relevant facts on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> {¶4} On February 9, 2013, Cleveland police and EMS responded to a 911 call reporting a gun fired and a male having been shot at 11905 Princeton Avenue. Rich's mother, Parbida McCoy, who lived at the Princeton Avenue residence with her son, testified that upon hearing her son ring the doorbell and knock at the same time, calling out "Momma, Momma, Momma," she ran to the door and discovered that Rich had been shot. Rich told her to call the police, and then he came inside, sat down, and then went outside where he collapsed immediately after EMS's arrival. According to Parbida, Rich laid his sweat jacket on the kitchen floor right after he told her to call the police. Parbida later gave the sweat jacket to the police without washing it.

> {¶5} EMS transported the victim to the hospital, where he was subsequently pronounced dead at 11:58 p.m. The medical examiner ruled Rich's death as a homicide caused by a "gunshot wound that [Rich] sustained to his body and the injuries that were caused to his liver and intestines."

> [*      *      *]

> {¶ 8} The state presented the testimony of Mario Godfrey, who was with Rich up until the shooting and identified Miller as the shooter. Godfrey testified that he and Rich, who were good friends, spent the day together "just kickin' it"—shopping, drinking, smoking some marijuana, and driving around in Rich's new van, starting at around noon on February 9. The two ultimately stopped around 9:00 p.m. at the auto shop recently acquired by Rich's friend, James Ellery Diggs ("El")—Miller's cousin.

{¶9} At the auto shop, Rich introduced Godfrey to Miller, who was from the same neighborhood and hanging out at the shop along with El and two other individuals. While at the auto shop, Rich and El got in a heated argument over $200. El claimed Rich owed him the money, and Rich denied ever getting it. According to Godfrey, El and Rich went into a back room to discuss their disagreement. El appeared to still be mad when he came out, but then told Rich upon his leaving to "forget the money," reaffirming that Rich was still his "dude."

{¶10} Rich and Godfrey proceeded to get in Rich's van to leave when Miller approached them, "askin Rich about the money." After Rich told Miller to get in the van, the three of them left the auto shop together. Miller sat in the back passenger seat behind Rich, who was driving, and Godfrey sat in the front passenger seat. According to Godfrey, Rich and Miller continued to talk about the $200 dispute between Rich and El. The conversation apparently ended, however, when they spotted a Maple Heights police officer on the side of the road, "clocking" other drivers for speeding. At that point, Miller told Rich to "drop me off," indicating that he had a gun on him. According to Godfrey, Miller was "stressing" and wanted to be dropped off after seeing the police officer. Godfrey testified that Rich ignored Miller's repeated requests to be dropped off and continued driving to where he needed to go.

{¶11} Upon turning on Rich's street, Miller told Rich "one last time, I need you to drop me off," which Rich stated "for the last time, I ain't gonna be able to do that." Godfrey testified as to the specific details leading up to the shooting as follows:

> [Miller] grabbed Rich by his collar with his left hand and he had the gun on him with his right hand. * * * So Rich tell him like, man, you gonna shoot me, man, because I ain't gonna drop you off? He kinda turned like Rich face towards him like he was trying to fire the gun but the gun didn't go off. So Rich, he tell Rich to pull over. Rich pull over on 121st and Princeton. So as he pullin' over he got Rich by his collar so Rich can't go nowhere. I'm on the passenger side. I'm looking at the peripheral vision of my eye because I don't want to just look straight at him because I don't want to see if he pulled the gun off on Rich. He back there messin' with the gun so he can get the gun together. When he got it together, he lowered it to his side, to Rich right-hand side, and shot him.

{¶12} At this point, Godfrey ran out of the van and up the street to his uncle's house. Godfrey testified that he was not sure if Miller actually shot Rich because he saw Rich "running up the street." Godfrey then saw Miller take off in the van.

{¶13} Godfrey called his girlfriend to pick him up and told her what happened. Godfrey did not call Rich because he was "scared." Godfrey received a telephone call the following morning and learned that Rich was dead. According to Godfrey, Miller also called him the next evening, threatening him that "same thing gonna happen to [you] that happened to Rich if [you] open [your] fuckin mouth."

{¶14} Godfrey testified that, in addition to telling his girlfriend, he told his parents what happened, all of whom encouraged him to contact the police. He further explained that, because of his criminal record, he was afraid to contact the police, fearing that the police would see him as a suspect. Godfrey acknowledged that he had previously been convicted of aggravated robbery, aggravated burglary, kidnapping, and a drug charge involving trafficking in PCP.

{¶15} Godfrey testified that he feared Miller, resulting in him hiding in his house after the shooting. After consulting with an attorney, Godfrey eventually contacted the police and provided a written statement regarding the shooting. On cross-examination, Godfrey explained that it took him weeks to report the shooting because "everybody had knew about the situation already[,]" and he "felt like the police was gonna know, and they was gonna take care of it themselves." According to Godfrey, "[Miller] told people" what happened.

{¶16} Maurita Mays, Godfrey's girlfriend, testified that Godfrey called her in the evening on February 9, 2013, and asked her to pick him up at his uncle's house. According to Mays, Godfrey told her that "some effed up stuff had happened. That [Miller] shot Rich." Mays testified that Godfrey was crying when he told her and that the two of them were in shock. Mays testified that they went to the Fourth District to report the shooting but that Godfrey never went inside. Mays testified that she told Godfrey to get an attorney first before reporting it to the police.

{¶17} The state also offered the testimony of Godfrey's mother, who corroborated that Godfrey told her about the shooting the next day. According to Godfrey's mother, she too told him that he had to report the shooting to the police.

¶18} Cleveland police detective Ignatius Sowa testified that he and his partner, Raymond Diaz, investigated Rich's death. They interviewed several people, including Rich's mother, and recovered the Puma sweatshirt believed to be worn by Rich the night of the shooting. Det. Diaz testified that on March 7, 2013, Godfrey contacted him and provided a statement consistent with his testimony at trial. After speaking with Godfrey, the police arrested Miller.

{¶19} After Miller's arrest, Miller agreed to speak with the detectives and provided a statement as to his activities on February 9, 2013. According to Miller's statement, he was present at El's car lot in Maple Heights when Rich and Godfrey arrived in Rich's van. Miller did not recall any argument. He further stated that he asked Rich, who he considered a lifelong friend, for a ride back to Cleveland, and they all left together in the van. According to Miller's statement, Rich dropped [Godfrey] off first, and then he dropped Miller off at a girl's house. Miller reported never seeing Rich again after that.

{¶20} Det. Sowa elaborated on cross-examination that Miller told the police that Rich dropped him off at Theresa Smith's house, a friend of Miller's girlfriend and that from Theresa's house, he went to the bar "Grownups," where his girlfriend worked as a barmaid. Det. Sowa admitted that he never went to Grownups to investigate Miller's story because Theresa—"the person who has the most knowledge that could most easily verify what he is telling us[,] tells us [:] I can't confirm or deny that he was here that night. He stops by frequently. He stays sometimes longer than others. But it was inconclusive."

{¶21} Det. Sowa further testified that Miller "was interested in knowing where we were getting the information we were getting and who we were getting it from. He wanted to know who we talked to." Det. Sowa also indicated that Miller represented during the interview that only three people "knew what happened": "Richard's little dude and him. " Det. Sowa also stated that he and his partner "went over * * * in detail" with Miller his statement that "[Godfrey] was dropped off first and he was dropped off last"—leaving Miller the last one in the car with Rich.

{¶22} According to Det. Sowa, Godfrey's cell phone records, which the police retrieved as part of their investigation, corroborated Godfrey's testimony that he

telephoned his girlfriend "shortly after" the shooting and telephoned his mother the next day.

{¶23} Det. Sowa further testified that he was not successful in interviewing El, the owner of the car lot, despite attempting to do so on many occasions. He acknowledged, however, that Miller consented to the search of his cell phones as well as his hotel room where he was staying the day before his arrest and to the search of two vehicles.

{¶24} Det. Sowa further testified that the police never located Rich's van. Det. Sowa further corroborated the testimony of the other officers that the state presented at trial as to the difficulty in gathering information from the residents in the area. Specifically, Det. Sowa testified that in the Fourth District, the location where the shooting occurred, people do not want to get involved in police investigations nor do they want to be known as a "snitch" in the neighborhood.

{¶25} The state offered testimony from forensic scientist Daniel Mabel. According to Mabel, gunshot residue was found on Rich's hands. Mabel further testified that he would expect to find gunshot residue on a person if the person was inside a vehicle and the gun was shot close to him. Mabel also conducted a trace metal detection test on Rich's hands to identify the existence of any traces of metal particles left on the hands. Mabel explained that if a reaction occurs, "it will look like a pattern of whatever the object was * * * maybe we can see a pattern, the back strap of gun, or handle of a knife, or something like that." Mabel, however, did not get any reaction on Rich's hands in this case.

{¶26} Mabel further testified that he examined the black Puma hooded sweatshirt, previously identified as having been the outer layer worn by Rich on the night of the shooting. The front of the sweatshirt contained a blood stain. Mabel further conducted a fiber comparison of the sweatshirt and performed tape lifts on a brown leather jacket, reported to be worn by Miller. Mabel did not discover any blood stains on the leather jacket but "found some fibers on the tape lifts that were similar to the fibers [he] had found in the victim's sweatshirt."

{¶27} At the conclusion of the state's case, the trial court granted Miller's Crim. R. 29 motion with respect to the theft charge on Count 9 of the indictment but denied it to the remaining counts.

{¶28} In support of his defense, Miller presented a single witness, Kenneth Davis, who corroborated Miller's statement that he was at Grownups on the night of the shooting. Davis testified that he specifically remembered seeing Miller at the bar on February 9, 2013, a Saturday, because he had run into Miller earlier that evening (around 7:45–8:00 p.m.) at a gas station where the two exchanged music CDs and "talked about going" to the bar. Davis further explained that February 9 stands out in his mind because he collects car payments on the ninth of every month as part of his business.

{¶29} According to Davis, he arrived at Grownups at 9:15 p .m. and Miller was already sitting at the bar. Davis testified that they stayed at the bar until closing. Davis testified that he learned about Rich's death in March and "they were saying a guy named Mario or somebody had something to do with it." Davis further indicated that he first spoke to Miller's defense counsel two days prior to testifying at trial and that he came forward upon the request of Miller's girlfriend.

{¶30} On cross-examination, however, Davis acknowledged speaking to the

prosecutor just 20 minutes before taking the stand and that during their conversation, Davis was not exactly sure of the date. He admitted that only after meeting with the defense attorney, he knew the exact date. He also testified that he knew it was around 7:45 p.m. when he first saw Miller at the gas station because it was "getting ready to get dark outside." According to Davis, it gets dark around "7:00, 7:30" in the wintertime in Cleveland, Ohio. He also reiterated that he closed his shop around 6:30 p.m., so it had to be after that time when he ran into Miller at the gas station. Davis further indicated that he knew it was 9:15 p.m. when he walked into the bar because he saw the time on a clock on the wall. Davis also admitted to having a criminal record, including convictions for having a weapon under disability, failure to comply with lawful order of a police officer, trafficking in drugs, and obstruction of justice.

{¶31} The jury found Miller not guilty of one of the aggravated murder counts as contained in Count 1 of the indictment but guilty of the remaining counts and attached firearm specifications. The trial court subsequently found Miller guilty of the having a weapon while under disability charge. The court additionally found Miller guilty of the repeat violent offender and notice of prior conviction specifications but did not impose any sentence for them.

{¶32} At sentencing, the trial court found that the following offenses merged as allied offenses: (1) the aggravated murder, murder, and felonious assault counts; and (2) the aggravated robbery, kidnapping, and grant theft counts. The trial court found the having a weapon while under disability count was not an allied offense to any other offense. The state elected to proceed on the aggravated murder and aggravated robbery counts.

{¶33} The trial court imposed an aggregate sentence of 49 years to life. Specifically, the court sentenced Miller to 30 years to life on the aggravated murder count plus a three-year consecutive sentence for the firearm specification; ten years on the aggravated robbery count plus a three-year consecutive sentence for the firearm specification; and three years for the having a weapon while under disability count, ordering all counts to be served consecutive to one another.

ECF Dkt. #13-1 at 112-121.

### B    **Procedural History**

#### 1.    **State Trial Court**

In its January 2013 term, the Cuyahoga County Grand Jury indicted Petitioner on one count of aggravated murder in violation of Ohio Revised Code ("ORC") § 2903.01(A) with firearm specifications; one count of aggravated murder in violation of ORC § 2903.01(B) with firearm specifications; one count of aggravated robbery in violation of ORC § 2911.01(A)(3) with firearm, PC, and RVO specifications; one count of kidnapping in violation of ORC § 291(A)(2) with firearm, PC and RVO specifications; one count of murder in violation of ORC § 2903.02(B), with firearm specifications; one count of felonious assault in violation of ORC § 2903.11(A)1) with firearm, PC and RVO specifications; one count of having weapons under disability in violation of ORC §

2923.13(A)(2) with firearm specifications; one count of grand theft in violation of ORC § 2913.02(A)(1) with firearm specifications; and one count of theft in violation of ORC § 2913.02(A)(1) with firearm specifications. ECF Dkt. #13-1 at 4-13.

On July 3, 2013, Petitioner, through counsel, filed a motion for discharge on speedy trial grounds in the trial court. ECF Dkt. #13-1 at 15. The State of Ohio filed an opposition brief, and on July 9, 2013, the trial court indicated that it had held a hearing on the motion and denied the motion. *Id*. at 15-22.

On July 16, 2013, Petitioner, through counsel, filed a voluntary waiver of his right to a jury trial as to the PC and RVO specifications on the third, fourth, and sixth counts of the indictment, and on the having weapons under disability charge in the seventh count. ECF Dkt. #13-1 at 23.

On July 23, 2013, the trial court issued a journal entry indicating that the jury found Petitioner not guilty of the first count of aggravated murder with firearm specifications, but the jury found Petitioner guilty of the second aggravated murder count with the firearm specifications, as well as aggravated robbery with firearm specifications, kidnapping with firearm specifications, murder with firearm specifications, felonious assault with firearm specifications, and grand theft with firearm specifications. ECF Dkt. #13-1 at 24. On September 9, 2013, the trial court issued a journal entry indicating the jury's verdicts as to the offenses, and its findings that Petitioner was guilty of the PC and RVO specifications to burglary, and of having weapons while under disability. *Id*. A Rule 29 of the Ohio Rules of Criminal Procedure was granted on the theft count. *Id*. at 24.

On August 28, 2013, the trial court sentenced Petitioner to 49 years to life imprisonment on the convictions. ECF Dkt. #13-1 at 26.

### 2. Direct Appeal

On September 27, 2013, Petitioner, through new counsel, filed a notice of appeal to the Ohio Eighth District Court of Appeals. ECF Dkt. #13-1 at 27. In his appellate brief, Petitioner asserted the following assignments of error:

> 1. THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR A MISTRIAL IN VIOLATION OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

2. THE TRIAL COURT ERRED BY FAILING TO MERGE ALL ALLIED OFFENSES OF SIMILAR IMPORT AND BY IMPOSING SEPARATE SENTENCES FOR ALLIED OFFENSES WHICH VIOLATED APPELLANT'S STATE AND FEDERAL RIGHTS TO DUE PROCESS AND PROTECTIONS AGAINST DOUBLE JEOPARDY.

3. APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THE TRIAL COURT ERRED BY DENYING HIS MOTIONS FOR ACQUITTAL.

4. THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

5. THE TRIAL COURT ERRED BY ADMITTING THE TESTIMONY [of] TWO WITNESSES WHO WERE NOT TIMELY DISCLOSED IN COMPLIANCE WITH CRIM. R. 16 AND WHOSE TESTIMONY WAS INADMISSIBLE HEARSAY VIOLATING APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

6. THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO DISMISS FOR VIOLATION OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL.

7. THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES THAT ARE CONTRARY TO LAW AND NOT SUPPORTED BY THE RECORD.

*Id.* at 34-70. The State of Ohio filed an appellate brief on March 3, 2014. *Id*. at 71-108.

On September 11, 2014, the Ohio appellate court affirmed the judgment of conviction, but remanded the case for the trial court to issue a new sentencing journal entry to incorporate the trial court's statutory findings supporting consecutive sentences that it had made at sentencing but failed to incorporate in its entry. *Id*. at 109-150.

### 3. Trial Court New Sentencing Entry

On October 1, 2014, the trial court issued a nunc pro entry to comply with the Ohio appellate court's remand. ECF Dkt. #13-1 at 151-152.

### 4. Motion for Reopening Pursuant to Ohio Appellate Rule 26(B)

On December 11, 2014, Petitioner pro se filed a motion in the Ohio Eighth District Court of Appeals, requesting that the court grant the motion due to alleged "egregious and ineffective assistance" of appellate counsel for Petitioner. ECF Dkt. #13-1 at 153-164. He asserted that his appellate counsel failed to raise the issue of prosecutorial misconduct, abuse of discretion, and ineffective assistance of trial counsel. *Id.* at 154. Petitioner set forth the following assignments of

error:

> 1. THE STATE'S PROSECUTING ATTORNEY COMMITTED PROSECUTORIAL MISCONDUCT WHICH DEPRIVED DEFENDANT-APPELLANT THE CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
>
> 2. DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN CONTRAVENTION OF THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
>
> 3. THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING SEVERAL OF DEFENSE COUNSEL'S OBJECTIONS DURING TRIAL.

*Id*. at 154-164. The State of Ohio filed a response to Petitioner's motion on February 2, 2015. *Id*. at 165-173.

On April 22, 2015, the Ohio appellate court trial court denied Petitioner's application to reopen, finding that Petitioner filed the application one day late and showed no good cause to excuse his late filing. ECF Dkt. #13-1 at 174-179.

On June 2, 2015, Petitioner pro se filed a notice of appeal to the Ohio Supreme Court from the Ohio appellate court's Rule 26(B) denial. ECF Dkt. #13-1 at 181. In his memorandum in support of jurisdiction, Petitioner asserted the following proposition of law:

> 1. THE EIGHTH APPELLATE DISTRICT COURT WAS[sic] ERRED IN FINDING APPELLANT MILLER "APPLICATION FOR REOPENING UNTIMELY[sic]

*Id*. at 182-202.

On August 26, 2015, the Supreme Court of Ohio declined to accept jurisdiction over Petitioner's appeal. ECF Dkt. #13-1 at 202.

### **5. Motion for Delayed Direct Appeal in Supreme Court of Ohio**

On April 6, 2015, Petitioner filed a motion for delayed appeal to the Ohio Supreme Court, appealing the Eighth District Court of Appeals' September 11, 2014 judgment on his direct appeal. ECF Dkt. #13-1 at 206. He asserted that his appellate attorney told him to write to the Ohio Public Defender's Office, which he did, but he did not receive a response from that office until after the expiration of his time to appeal to the Supreme Court of Ohio. *Id*. at 207. He also indicated that he was unable to hire an attorney, was uneducated in the law, and had hurdles at the prison in securing

-9-

library time. *Id.*

On June 3, 2015, the Ohio Supreme Court denied Petitioner's motion for delayed appeal and dismissed his case. ECF Dkt. #13-1 at 253.

### 6. Motion for Delayed Reconsideration in Ohio Appellate Court

On May 24, 2016, Petitioner pro se filed a motion for delayed reconsideration pursuant to Rule 26(A) of the Ohio Rules of Appellate Procedure, asking the Ohio appellate court to reconsider its direct appeal decision. ECF Dkt. #13-1 at 254-340.

On May 26, 2016, the Ohio appellate court denied Petitioner's motion pursuant to Rule 26 of the Ohio Rules of Appellate Procedure, indicating that the appeal was journalized on September 11, 2014. ECF Dkt. #13-1 at 345.

## II. 28 U.S.C. § 2254 PETITION

On May 23, 2016, Petitioner pro se executed the instant petition for a writ of federal habeas corpus, which was filed with the Court on June 7, 2016. ECF Dkt. #1. Petitioner raises the following grounds for relief:

> GROUND ONE: The trial court erred by denying appellant's motion for a mistrial in violation of his federal constitutional rights to due process and a fair trial.
>
> Supporting Facts: The court allowed the state to continuously taint the jury with statement/testimony given by the prosecutor and testimony in trial given by Homicide Detective Sowa who sat in every trial date and built this entire case of the state, gave open court testimony that "anonymous tips" is the evidence that the petitioner is the one who committed this crime, also state witness Mario Godfrey who first began the process of saying in open court "Anonymous tip" said that the petitioner committed this crime. How would Godfrey advocate these anonymous tips were given, then to continuously advocate these comments as evidence would not allow the petitioner to confront these said accusers and Would allow the jury to take for granted that these type of comments are legal factual evidence to be upheld in court. Especially after Detective Sowa's testimony was directly given that there is nothing linking the petitioner to these crimes, so to otherwise give validity to "anonymous tips". Even after an attempt of a cure these comments continued by the state.
>
> GROUND TWO: The trial court erred by failing to merge all allied offenses of similar import and by imposing separate sentences for allied offenses which violated appellant's federal rights to due process and protection against double jeopardy.
>
> Supporting Facts: All the charges were from a single set of circumstances, with a single animus, involving a single victim. And there was no testimony at all, that support any evidence of the defendant having a different frame of motive to cause these charges separately. There was testimony given that this incident snowballed from a heated discussion which turned to the defendant being held against his will

inside of a vehicle which was the cause in this incident. There the trial court erred by giving the petitioner consecutive sentences of an incident that was provoke singularly upon one frame of thought that the petitioner wanted to be let out of the vehicle and there was no other testimony given other wise to support a different frame of thought that cause these chain of events

GROUND THREE: The convictions were not supported by sufficient evidence and the trial court erred by denying his motions for acquittal.

Supporting Facts:

There was no testimony that corroborate[sic] state witness self[sic] serving testimony which state witness Mario Godrey testified to finding a way for hours to exculpate himself from being blame[sic] for murder. There was no corroboration or consistency by state witnesses, the medical examiner gave two other ways (standing & Running) contrary to state witness testimony, of victim sitting, No physical evidence. No trace, no match to fibers to give any form of consistency, no DNA, no weapon, no investigative certification that this van was ever the actual crime scene. Nor did petitioner ever give any statement that he seen, knew of, or told officer he and Godfrey only knew what happen in any way to infer he was guilty of any crime. Neither did petitioner infer to officers while he was in the van earlier that day prior to the time of the incident that he seen heard or knew a crime happen while he was in the victim's or Mario Godfrey presence. State witness Mario Godfrey testified to petitioner being the one who was held against his will which provoke[sic] the altercation. And Godfrey testified that he didn't ever hear or see petitioner infer or threaten to deprive victim of ay property without consent. Because Godfrey said he didn't see or hear what was happening on the other side of this alleged van. Witnesses gave no testimony of agg.[sic] murder robbery or kidnapping. There could never be a burden fulfilled without the facts being presented as evidence to the elements of all the counts in the indictment which is said to happen in this chain of events set from the particular mind set and actions performed. So there was no facts presented to be construed to fit the states[sic] case in favor of prosecution when there are no fact to the elements of the charges in the indictment in this case.

GROUND FOUR: The convictions are against the manifest weight of the evidence.

Supporting facts: The state witness gave direct testimony that he brainstormed and found that he could not contact or see about his friend that he claimed was shot because he would be blamed for the murder by leaving phone evidence etc so he immediately gave the court the evidence he created to exculpate himself from the crimes he claimed occurred, he also withheld this information for a month before he came wit[sic] his story. Which was after homicide detective came to his home looking for him and told his family they were looking for him and this incident. The medical examiner gave two other ways opposite states[sic] case that this occurred while sitting (standing and running), trace metal gave testimony that the evidence does not show this occurred in a closed area. Expert testified that there was No match to any fibers to connect the petitioner to this crime. There was never any evidence that could be shown this incident happen[sic] inside a van. In fact there was physical evidence to show this happen[sic] inside the driveway of the victims[sic] home, given by expert testimony. The victims[sic] clothing does not in any way support being shot the way State witness Mario Godfrey testified to. And at every turn of police testimony and investigations contradict the testimony of states'[sic] case. Even not testing a bloody hat found at the designated crime scene which was the home of the victim, that was the only place investigated for the occurrence of this crime. The Only thing that corroborates Mario Godfrey was the

interest witnesses– his mother and girlfriend. Police officers even after the petitioner asked them to retrieve physical evidence on video surveillance that would have exonerated the petitioner of these crime, was[sic] not even bothered to investigate. Cell phone records do not corroborate the testimony of state witnesses[sic] testimony. All that was given was Contradictory to the actual physical evidence in this case.

GROUND FIVE: The trial court erred by admitting the testimony of two witnesses who were not timely disclosed in compliance with Criminal Rule 16. And whose testimony was inadmissible hearsay violating appellant's right to due process and a fair trial.

Supporting facts: State witness Mario Godfrey testified to his motive to fabricate in order to exculpate himself from being charged with murder. By avoiding any contact that would link him to the time and victim of the incident. He testified to having full contemplation for 8 to 10 hours of brainstorms on the incident prior to giving anyone the story he came up with hours earlier. And he gave testimony that he did not know the victim was shot till[sic] he was informed the next day. Being the state witness claimed to have no knowledge of the incident to be the declarent[sic] in shock of said information and also testified to motive to fabricate so there was no force of the court to apply this rule, nor have exception to any hearsay rule with purpose to fabricate and lack of stilled thought. The court did not allow the least severer[sic] sanction by allowing the defense the right to prepare an effective defense to the surprise witnesses. Instead of only allowing the defense minutes before they testified a few questions of what they would say but no time to verify rather then phone records corroborate their testimony, or if they were actually the recipients at the time they testified to etc. This denial denied any way to effectively cross examine the witnesses, in defending the rights of the petitioner in any way.

GROUND SIX: The trial court erred by denying Appellants[sic] motion to dismiss for violation of his federal and state constitutional right to speedy trial

Supporting facts:

The trial court denied petitioner rights to a speedy trial on false grounds. 1.) There was never any Parole holder, nor parole sanction of violation of parole to deny the computation of 3 for 1, to equal 90 day speedy trial guarantee. The gave court computation to dates and or existence to things that there is no record to support a holder, or otherwise. Nor did the petitioner impliedly waive, nor waive his rights by written request for any continuation to prolong his right. Only request officially made by defense was for a private investigator. There was no discovery to furnish to the state by defense, until 7 days prior to trial, which violates no procedure of the court. So there was no cause to furnish to stop the toll of speedy trial right, nor were there any unjustifiable delays in commencing prosecution by defense. And a demand for discovery by the state to stop the toll of time in this case still violates the guarantee of ones rights to be tried by the very court that gained jurisdiction prior to any discovery demand with power to prosecute successfully. To place the burden of state and court duty upon the defense to assist in "the defendant try his own self within 90 days." If the trial court is allowed to deny the protection and right to be tried in mandatory time, is to make a defendant responsible for the burden to prosecute, and try his own self in court while upholding the duty and burden of state/court, and be a defendant in the same motion within time set by a bias procedure to the defense. This is not the purpose nor cause for right set in the process of court, not purpose of rights that protect one from prejudice or bias tactics that void the true power of the court.

GROUND SEVEN: The trial court erred by imposing consecutive sentences that are contrary to law and not supported by the record.

Supporting facts:

The record of this case does not apply to the order served by the court, PRC, and Parole hold two different categories of law when it was being ordered upon an offender. In order to apply the terms "New" and "Old" law to an offender still must fit the statute. There must be proportionality analysis done to sentence an offender supported by the record of the conduct of the offender in the process towards the victim, and how or why the incident occurred. To say rather a premeditated crime or someone defending themselves from a crime, altercation through what chain of events etc. And to sentence an individual through the means that upholds one law but is contrary to the other is totally an unconstitutional order by the court and does not posses[sic] the legal force to uphold the sentence.

GROUND EIGHT: Prosecutor Mis-Conduct (This ground was raised pursuant to App.R. 26(B))

Supporting facts:

To purposely prejudice the petitioner, state committed deception upon the court with false testimony and fraudulent presentation of governmental document, used to uphold perjured testimony of state witness producing a conviction on fraudulent grounds.

Prosecution after the order of criminal rule 29 use a dismissed charge of theft through the venue of robbery, which state already admitted to the court there was no evidence of property from the pockets of the victim. Being that the robbery still stood prosecution used void charge as evidence for the jury to find guilt in an open robbery charge as the theft of property stolen from the victim with no regards to the constitution, order of the court, or duty of prosecution. Prosecution proclaimed to know 4 months prior to the time of disclosure give to the defense, and court. Which also is deception upon the court because prior to the court giving admissibility to the witnesses prosecution told the court they just found out who they were and what their names were. Denying defense the opportunity to prepare a proper defense for the witnesses. The prosecution in this case used foul comments, evidence outside the realm of the evidence of this case, personal knowledge of statements that the victim knew the petitioner shot him when the victim never made any statement other that he did not know who shot him. And foul comments that the victim was not a snitch and would not tell the petitioner shot him because the victim was going to retaliate.

Cumulative rouge conduct contrary to the constitution by the prosecution continued in sole purpose to gain a conviction in leading the jury to a verdict that the prosecutions[sic] personal knowledge and or foul comments towards the defense alibi witness, saying he was coerced to give testimony. Prosecution told the jury to use media, old cases, in the past or present as relevant evidence that the jury don't know about that would prove guilt to convict. Prosecution with no regards to fair trial or due process told the jury that the petitioner's past and reputation is the reason the jury would pick the petitioner for Murder alone, and not the facts of this case. Violating any protection of one asserting the 5th amendment right. Prosecution not only saying that the petitioner is a witness against himself, but falsified the petitioner statement made to Detectives which in no way incriminates the petitioner, to be used as a witness against The prosecution also told the jury that the petitioner is a witness against himself void of con does not in any way represent the petitioner.

Prosecution/Detective falsified police reports of witnesses by deceiving the court that the statements held exculpatory evidence against the petitioner alibi, when the reports never held no information that even ask of the incident at hand. State deceived the court by falsifying the petitioner's statement to fit self incrimination in order to persuade the jury that the petitioner admitted to guilt, and exonerated state witness. Prosecution upheld the perjured testimony of state witness. Prosecution with personal knowledge spoke that the van was the crime scene when it was never established through no form of investigation or other wise[sic] the van was indeed the crime scene. This conduct not only impede[sic] the defense from effective defending the petitioner [sic] violated a fair trial and due process rights. Prosecution upheld perjured testimony so the admittance of hearsay would stand in court.

GROUND NINE: Ineffective assistance of Appellant and Trial counsel (This ground was raised pursuant App. R. 26(B))

Supporting facts:

Appellant counsel failed to raise the constitutional violation of ineffective assistance of trial counsel, where objections were not raised to prosecutor misconduct during closing arguments using dismissed charges as the evidence to a verdict to convict in the body of another charge that lack the elements to stand. Willfully admitting to the court during criminal rule 29 that there was no evidence of such charge. Depriving the petitioner the right to due process, fair trial, and protection of Double jeopardy. Appellant counsel failed to raise the violation of trial counsel not [sic] not objecting during voir dire of juror's friendship to law enforcement officer, and defense counsel gave no peremptory challenge to remove her from this personal history of the juror to law enforcement being a victim of a crime. While allows bias and prejudice to form against a just and sound verdict. Also failing to raise the issue of ineffective assistance of trial counsel not to object to state witness police officer testimony that related two other shootings to this case at barr[sic], which allows prejudice to a fair trial and due process. Trial counsel did not object to none of state exhibits to be given to the juror deliberation room which exhibits contained State witness Mario Godfrey statement that spoke of the petitioner having a prior criminal record. Making the petitioner a witness against himself while under the protection and right of the 5th Amendment of the U.S. Constitution. And other exhibits that would prejudice the petitioner in a case that was weighed totally on circumstantial and will violate the petitioner's rights. Appellant counsel failed to raise ineffective assistance of Trial counsel[sic] failed to submit the petitioner's alibi defense during the renewal of criminal rule 29. [sic] appellant counsel failed to raise ineffective assistance of trial counsel not moving for a mistrial or objection when hearsay witness Maurita Mays and Sharon Means testimony[sic] that they talked to states witness Mario Godfrey about his testimony [sic]in given in court earlier that day, which in turn allowed these two interest[sic], who is the girlfriend, and mother of his child, and his own mother, plus state witness went home to her the night prior to the surprise witness being admitted in court to testify the following day after to be able to corroborate state's witness.

GROUND TEN: Abuse of Discretion (this ground was raised pursuant 26(B)

Supporting facts:

Appellant counsel failed to raise the constitutional violation that stand with merit and supported by the record on direct appeal where the court abuse[sic] its discretion by overruling defense objection which allowed inadmissible evidence to be used when the material was not substantiated by authenticated

-14-

expert testimony. Which is contrast allowed this testimony to be credited to the states[sic] burden of proof.

The ineffective assistance Appellant counsel failed to raise the violation of The Court abused its discretion when allowing state witness testimony on what a non testifying witness said, using full dialog[sic] of back and forth conversation speaking for his own self (state witness Mario Godfrey) and imitation of non testifying witness to give certification to the inadmissible evidence being presented to the jury. No way of a fair trial to cross examine, verify or contradict this testimony given, denying, and violating the petitioner's constitutional rights.

*Id*. at 5-20. On July 28, 2016, Petitioner filed a motion to amend and supplement his federal habeas corpus petition in order to add an eleventh ground for relief. ECF Dkt. #9. He filed another motion to amend or supplement his federal habeas corpus petition on August 1, 2016 in order to add an eleventh ground for relief. ECF Dkt. #10. The Court granted Petitioner's motions on November 3, 2016. Petitioner's eleventh ground for relief states:

GROUND 11: Actual Innocence

Supporting facts:

The Petitioner is actually innocent of the charges in the indictment substantively and procedurally. The state produced the conviction without the legal force of the constitution of the United States, the court being rouge to the standard of proof required to convict the petitioner. State procedurally violated the petitioner using the elements of another offense which does not hold the standard of proof in the testimony nor factual evidence used in the court to unconstitutionally convict the petitioner of said charges. In turn did allow the state to knowingly deprive the petitioner of his liberty without the element of the charges in the indictment being fulfilled by due process of law, using prejudice the petitioner's constitutional rights of due process law and a fair trial, which also mislead the jury to lose their way to convict charges that otherwise to this procedural violation of not fulfilling the elements of said charge that by state or federal constitution does not fit the facts of this case presented. Substantively the petitioner was violated constitutionally there ever being any evidence to said charges thru[sic] testimony or physical evidence presented thru out[sic] this case to conviction the petitioner by the standards of proof.

ECF Dkt. #s 9-1 at 1; ECF Dkt. #10-1 at 2. Respondent filed an answer/return of writ on November 29, 2016. ECF Dkt. #13. Despite the Court granting Petitioner leave in which to file a traverse, Petitioner did not file a traverse.

On January 9, 2017, Petitioner filed a motion to expand the record pursuant to Rule 7 of the Federal Rules of Civil Procedure ECF Dkt. #15. Respondent filed an opposition brief on the same date and Petitioner filed a reply brief on January 27, 2017. ECF Dkt. #s 16, 17.

On June 2, 2017, Petitioner filed a "Stay in Abeyance" and on June 5, 2017, Respondent filed a brief in opposition to the stay request. ECF Dkt. #s 20, 21.

### III. PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

#### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

#### B. Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Further, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*,

375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).

The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

## C.     Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

> (1)     whether the petitioner failed to comply with an applicable state procedural rule;
>
> (2)     whether the state courts actually enforced the state procedural sanction;

(3)     whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

(4)     if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a

legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986). A petitioner can also show that a fundamental miscarriage of justice will occur if the Court does not address his procedurally defaulted ground for relief. *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Id.*

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## IV.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

(d)        An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

        (1)        resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

        (2)        resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

## V.    **ANALYSIS**

Respondent asserts that the Court should dismiss Petitioner's federal habeas corpus petition because he has procedurally defaulted all of his grounds for relief by failing to timely appeal the Ohio appellate court's decision on his direct appeal to the Ohio Supreme Court. ECF Dkt. #13 at 18-21. Alternatively, Respondent asserts that: Petitioner's first, second, fourth, fifth, part of sixth, seventh, eighth, tenth, and eleventh grounds for relief are not cognizable before this federal habeas corpus Court; his eighth, ninth, and tenth grounds for relief are procedurally defaulted for additional reasons apart from the first assertion of procedural default; and Petitioner's third and rest of his sixth grounds for relief are not meritorious under the AEDPA.

For the following reasons, the undersigned recommends that the Court find that Petitioner has procedurally defaulted his entire federal habeas corpus petition.

### A.      Procedural Default of Entire § 2254 Federal Habeas Corpus Petition

Respondent first asserts that Petitioner has procedurally defaulted his entire federal habeas corpus petition because he failed to file a timely direct appeal to the Ohio Supreme Court from the Ohio appellate court's decision affirming the trial court's judgment. ECF Dkt. #13 at 19–21.

In order to determine whether procedural default bars the instant petition, the undersigned must apply the four-pronged *Maupin* test. The undersigned recommends that the Court find that the first prong of the *Maupin* test is met because Petitioner failed to comply with the applicable procedural rules of the Ohio Supreme Court. Rule 7.01(A)(1)(a)(i) of the Rules of Practice for the Supreme Court of Ohio requires a party to file a notice of appeal with the Ohio Supreme Court within 45 days of the entry of judgment from which he is appealing. Ohio S.Ct. Prac. R. 7.01(A)(1)(a)(i). The Ohio appellate court issued its judgment on Petitioner's direct appeal on September 11, 2014. ECF Dkt. #13-1 at 109-150. Petitioner did not file a timely appeal to the Ohio Supreme Court, but rather, filed a motion for delayed appeal to that court on April 6, 2015, well after the 45-day time in which to appeal. ECF Dkt. #13-1 at 206.

Further, while Petitioner did file a Rule 26(B) application for reopening in the Ohio appellate court on December 11, 2014, he failed to comply with the applicable Ohio Rules of Appellate Procedure as well. ECF Dkt. #13-1 at 153-164. Rule 26(B)(1) of the Ohio Rules of Appellate Procedure requires a criminal defendant to apply for reopening within 90 days from the journalization date of the appellate judgment unless good cause is shown for filing it later. Ohio App. R. 26(B)(1). Again, the Ohio appellate court issued its judgment on September 11, 2014, but Petitioner filed his Rule 26(B) application for reopening on December 11, 2014. *Id.* at 109-150, 153-164. The Ohio appellate court denied Petitioner's application for reopening because he had filed it one day late and he showed no good cause for his late filing. *Id*. at 174-179.

Thus, in both instances, before the Ohio Supreme Court on his delayed direct appeal and before the Ohio appellate court on his Rule 26(B) application for reopening, Petitioner failed to comply with the procedural rules of both the Ohio Supreme Court and the Ohio court of appeals.

The Ohio Supreme Court denied Petitioner's motion for delayed appeal on June 3, 2015 and the Ohio appellate court denied his Rule 26(B) application for reopening on April 22, 2015. ECF Dkt. #13-1 at 174-179, 253. The second *Maupin* factor is therefore satisfied because both the Ohio Supreme Court and the Ohio appellate court actually enforced the procedural bars by denying Petitioner's motion for a delayed appeal and his application for reopening.

The third factor is also met because the Supreme Court's denial of Petitioner's motion for a delayed appeal constitutes a procedural ruling that bars federal review of the merits of the petition. "By its very nature, a denial of a motion for leave to file a delayed appeal is a denial solely on procedural grounds even if the court does not expressly cite the procedural bar in its denial. Second, courts have held that a denial of a request for a delayed appeal is a procedural default without merits review." *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir.2004). Accordingly, the denial of Petitioner's motion for delayed appeal is an adequate and independent ground to foreclose review of the merits of his petition in the federal habeas court. *Id.* The Ohio appellate court's denial of Petitioner's Rule 26(B) application for reopening is also an adequate and independent basis to constitute a procedural default. *Parker v. Bagley*, 543 F.3d 859, 861 (6th Cir. 2008).

Since the first three prongs of the *Maupin* test are met, the instant petition will be barred unless Petitioner can show cause for his default and prejudice resulting from the constitutional violation or extraordinary circumstances that require this Court to review his federal habeas corpus petition.

### B.     Cause and Prejudice

Petitioner did not file a traverse alleging cause and prejudice or extraordinary circumstances. However, he did file a "Stay in Abeyance" document, requesting that this Court discontinue the proceedings under Rules 33 and 62 of the Federal Rules of Criminal Procedure because he has "ascertained new evidence with the assistance of legal expert." ECF Dkt. #20 at 1. However, neither in his "Stay in Abeyance" nor his accompanying memorandum in support does Petitioner identify this "new evidence" or offer any further explanation or specification of said evidence. ECF Dkt. #s 20, 20-1. Thus, Petitioner has failed to establish cause and prejudice warranting review of the instant §2254 federal habeas corpus petition despite his procedural default. In addition, the "Stay in Abeyance" itself should be denied as Petitioner presents insufficient detail in order to warrant either

a stay or any other action by this Court. ECF Dkt. #20.

In his motion for leave to file his delayed appeal to the Ohio Supreme Court, Petitioner did assert that he did not receive a response from the Ohio Public Defender's Office regarding whether it would represent him on appeal until after the Ohio appellate court ruled on his Rule 26(B) application for reopening. ECF Dkt. #13-1 at 207-208. However, Petitioner acknowledged that he did receive a copy of the Eighth District Court of Appeals' opinion denying his appeal on October 1, 2014, which is well before the expiration of his time within which to file with the Ohio Supreme Court. *Id.* Consequently, the evidence before the Court demonstrates that Plaintiff received timely notice of the denial of his appeal, but nevertheless failed to file an appeal with the Ohio Supreme Court within the statutory time frame. Therefore, Petitioner has failed to demonstrate cause for failing to file a timely appeal with the Ohio Supreme Court.

Furthermore, Plaintiff may not rely upon his incarceration, his *pro se* status, difficulty finding counsel, and his limited education to establish cause. Such claims have been squarely addressed and rejected by the Sixth Circuit. See *Bonilla*, 370 F.3d at 498. ("First, Bonilla's *pro se* status before the Ohio Supreme Court is insufficient to establish cause to excuse his procedural default. See *Hannah v. Conley*, 49 F.3d 1193, 1197 ((6th Cir.1995)). Second, Bonilla's ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default. See id. . . . Fourth, the fact that Bonilla's time in the prison law library was limited to four hours per week was insufficient to establish cause to excuse his procedural default. Additionally, Bonilla does not indicate why he required additional time to conduct legal research and how his limited law library time prevented him from filing a timely notice of appeal.").

Accordingly, the undersigned recommends that the Court find that Petitioner has not established cause for failing to comply with the state's filing requirements. Moreover, since Petitioner has failed to establish cause, the undersigned recommends that the Court find that it is unnecessary to determine whether he was prejudiced by the Supreme Court of Ohio's decision. See *Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

### C. Extraordinary Circumstances

Beyond *Maupin*, the Court can still consider the instant petition if the Court determines that it is "an extraordinary case, where a constitutional violation has probably resulted in the conviction

of one who is actually innocent..." *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986). The Sixth Circuit Court of Appeals explained that the "actual innocence" exception, or the "fundamental miscarriage of justice" gateway, is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004), quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(quoting *Murray*, 477 U.S. at 496. The Sixth Circuit held that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*

Petitioner asserts in Ground for Relief Number 11 that he is actually innocent of the convictions. ECF Dkt. #10-1 at 2. However, actual innocence is not cognizable in federal habeas as a free-standing claim. *Herrera v. Collins*, 506 U.S. 390, 404-405 (1993). Further, even if the Court reviews the substance of this Ground for Relief, Petitioner mainly asserts that the state failed to produce sufficient evidence and the conviction was against the manifest weight of the evidence. *Id.* He offers no substantive assertion or evidence that he is factually innocent of the crimes for which he was convicted. Therefore, a perfunctory claim of actual innocence should fail.

Accordingly, the undersigned recommends that the Court find that Petitioner has not established actual innocence in order to show extraordinary circumstances warranting review of his federal habeas corpus petition despite his procedural default.

Since the undersigned recommends that the Court dismiss Petitioner's federal habeas corpus petition with prejudice because he has procedurally defaulted his entire § 2254 federal habeas petition, the undersigned will not address Respondent's other arguments of noncognizability and nonmeritorious grounds for relief.

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice as Petitioner has procedurally defaulted his entire federal habeas corpus petition. ECF Dkt. #1. Moreover, based upon the instant Report and Recommendation, the undersigned DENIES AS MOOT Petitioner's "Stay in Abeyance" (ECF Dkt.

#20) and his "Motion Requesting Expansion of the Record Pursuant to Federal Rule of Civil Procedure 7" (ECF Dkt. #15).


DATE:   August 8, 2017                                    _/s/ George J. Limbert_____
                                                          GEORGE J. LIMBERT
                                                          UNITED STATES MAGISTRATE JUDGE


        ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).